UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

STEPHANIE ELY,

                       Plaintiff,

           v.

CAROLYN W. COLVIN,
COMMISSIONER OF SOCIAL SECURITY,

                   Defendant.

_____

DECISION & ORDER

14-CV-6641P

## PRELIMINARY STATEMENT

Plaintiff Stephanie Ely ("Ely") brings this action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying her applications for Supplemental Security Income Benefits and Disability Insurance Benefits ("SSI/DIB"). Pursuant to 28 U.S.C. § 636(c), the parties have consented to the disposition of this case by a United States magistrate judge. (Docket # 11).

Currently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Docket ## 9, 14). For the reasons set forth below, I hereby vacate the decision of the Commissioner and remand this claim for further administrative proceedings consistent with this decision.

**BACKGROUND**

Ely applied for SSI/DIB on August 9, 2011, alleging disability beginning on May 29, 2010, due to mental instability, depression, anxiety, and back pain.  (Tr. 11, 140-41, 165).[1] On November 16, 2011, the Social Security Administration denied both of Ely's claims for benefits, finding that she was not disabled.  (Tr. 45-47).  Ely requested and was granted a hearing before Administrative Law Michael W. Devlin (the "ALJ").  (Tr. 8, 66-67, 105-15).  The ALJ conducted a hearing on October 23, 2012.  (Tr. 27-44).  In a decision dated March 22, 2013, the ALJ found that Ely was not disabled and was not entitled to benefits.  (Tr. 8-21).

On September 16, 2014, the Appeals Council denied Ely's request for review of the ALJ's decision.  (Tr. 1-5).  Ely commenced this action on November 13, 2014 seeking review of the Commissioner's decision.  (Docket # 1).

**DISCUSSION**

I.      **Standard of Review**

This Court's scope of review is limited to whether the Commissioner's determination is supported by substantial evidence in the record and whether the Commissioner applied the correct legal standards.  *See Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004) ("[i]n reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision"), *reh'g granted in part and denied in part*, 416 F.3d 101 (2d Cir. 2005); *see also Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) ("it is not our function to determine *de novo* whether plaintiff is disabled[;] . . . [r]ather, we must determine whether the Commissioner's conclusions are supported by substantial evidence in the record as a whole or are based on an

---

[1]  The administrative transcript shall be referred to as "Tr. __."

erroneous legal standard") (internal citation and quotation omitted).  Pursuant to 42 U.S.C.

§ 405(g), a district court reviewing the Commissioner's determination to deny disability benefits

is directed to accept the Commissioner's findings of fact unless they are not supported by

"substantial evidence."  *See* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner . . . as to

any fact, if supported by substantial evidence, shall be conclusive").  Substantial evidence is

defined as "more than a mere scintilla.  It means such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401

(1971) (internal quotation omitted).

   To determine whether substantial evidence exists in the record, the court must

consider the record as a whole, examining the evidence submitted by both sides, "because an

analysis of the substantiality of the evidence must also include that which detracts from its

weight."  *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  To the extent

they are supported by substantial evidence, the Commissioner's findings of fact must be

sustained "even where substantial evidence may support the claimant's position and despite the

fact that the [c]ourt, had it heard the evidence *de novo*, might have found otherwise."  *Matejka v.*

*Barnhart*, 386 F. Supp. 2d 198, 204 (W.D.N.Y. 2005) (citing *Rutherford v. Schweiker*, 685 F.2d

60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983)).

   A person is disabled for the purposes of SSI and disability benefits if he or she is

unable "to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which has lasted or

can be expected to last for a continuous period of not less than 12 months."  42 U.S.C.

§§ 423(d)(1)(A) & 1382c(a)(3)(A).  When assessing whether a claimant is disabled, the ALJ

must employ a five-step sequential analysis.  *See Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir.

1982) (*per curiam*).  The five steps are:

> (1)     whether the claimant is currently engaged in substantial gainful activity;
>
> (2)     if not, whether the claimant has any "severe impairment" that "significantly limits [the claimant's] physical or mental ability to do basic work activities";
>
> (3)     if so, whether any of the claimant's severe impairments meets or equals one of the impairments listed in Appendix 1 of Subpart P of Part 404 of the relevant regulations;
>
> (4)     if not, whether despite the claimant's severe impairments, the claimant retains the residual functional capacity to perform his past work; and
>
> (5)     if not, whether the claimant retains the residual functional capacity to perform any other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) & 416.920(a)(4)(i)-(v); *Berry v. Schweiker*, 675 F.2d at 467.

"The claimant bears the burden of proving his or her case at steps one through four[;] . . . [a]t

step five the burden shifts to the Commissioner to 'show there is other gainful work in the

national economy [which] the claimant could perform.'"  *Butts v. Barnhart*, 388 F.3d at 383

(quoting *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998)).


## II.    <u>Analysis</u>

        Among other alleged errors, Ely contends that the ALJ's mental Residual

Functional Capacity ("RFC") assessment was flawed because the ALJ improperly discounted the

opinion of her treating psychiatrist, Stanko Rodic ("Rodic"), MD, dated February 20, 2013.

(Docket ## 9 at 22-28; 16 at 1-4).  Specifically, the ALJ stated:

> Despite his treating relationship with the claimant, limited weight
> is given to the opinion of Dr. Rodic.  The treatment notes (Exhibit
> 25F) consistently assess a GAF of 60 or more, which is not
> consistent with Dr. Rodic's functional ratings.  In addition, Dr.
> Rodic's retrospective opinion of the claimant's disability for an
> almost two year period prior to his first treatment of the claimant is
> not supported by the record as a whole.

(Tr. 18).

Ely contends that the ALJ failed to provide good reasons for his decision that

Rodic's opinion was entitled to "little weight."  (Docket # 9-1 at 22-25).  Specifically, Ely

maintains that the ALJ improperly determined that Rodic's opinion was inconsistent with his

assessment that Ely had a GAF of over 60.  (*Id.* at 25-27).  Additionally, Ely maintains that the

only other reason for discounting the opinion provided by the ALJ was that Rodic's opinion

covered an approximately three year time period, yet Rodic had treated Ely for only one of those

three years.  (*Id.* at 27-28).  According to Ely, it was improper for the ALJ to discount Rodic's

opinion merely because it was retrospective.  (*Id.*).  The government maintains that the ALJ

properly considered the GAF score assessed by Rodic in evaluating the weight to accord his

opinion and discounted Rodic's opinion, not only because it was retrospective and inconsistent

with the GAF scores, but also because it was not supported by the record as a whole.  (Docket #

14 at 23).

Generally, a treating physician's opinion is entitled to "controlling weight" when

it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is

not inconsistent with the other substantial evidence in [the] case record."  20 C.F.R.

§§ 404.1527(c)(2) and 416.927(c)(2); *see also Gunter v. Comm'r of Soc. Sec.*, 361 F. App'x 197,

199 (2d Cir. 2010) ("the ALJ [must] give controlling weight to the opinion of the treating

physician so long as it is consistent with the other substantial evidence").  Thus, "[t]he opinion of

a treating physician is generally given greater weight than that of a consulting physician[]

because the treating physician has observed the patient over a longer period of time and is able to

give a more detailed picture of the claimant's medical history." *Salisbury v. Astrue*, 2008 WL

5110992, *4 (W.D.N.Y. 2008).

       "An ALJ who refuses to accord controlling weight to the medical opinion of a

treating physician must consider various 'factors' to determine how much weight to give to the

opinion." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004).  The ALJ must explicitly

consider:

> (1)    the frequency of examination and length, nature, and extent
> of the treatment relationship,
>
> (2)    the evidence in support of the physician's opinion,
>
> (3)    the consistency of the opinion with the record as a whole,
>
> (4)    whether the opinion is from a specialist, and
>
> (5)    whatever other factors tend to support or contradict the
> opinion.

*Gunter v. Comm'r of Soc. Sec.*, 361 F. App'x at 199.  The regulations also direct that the ALJ

should "give good reasons in [his] notice of determination or decision for the weight [he] give[s]

[claimant's] treating source's opinion." *Halloran v. Barnhart*, 362 F.3d at 32 (quoting 20 C.F.R.

§ 404.1527(c)(2)).

      With respect to Ely's mental RFC, the ALJ determined that Ely was able to

understand, remember and carry out simple work instructions and tasks and consistently

maintain attention and concentration for up to two hours, but that she could only occasionally

interact with coworkers and supervisors, rarely work in conjunction with coworkers and have

little to no contact with the general public.  (Tr. 15).  In reaching this RFC assessment, the ALJ

stated that he gave "limited weight" to portions of Rodic's opinion. In doing so, he seemingly

failed to adopt or account for many of the limitations assessed by Rodic, including his opinions

that Ely had no functional ability to remember work procedures, function independently on a job,

complete a normal workday on a sustained basis, exercise appropriate judgment, concentrate and

attend to tasks over an eight-hour period, or tolerate customary work pressures in a work setting,

including production requirements and demands. (Tr. 860-64). The ALJ's mental RFC

assessment also appears inconsistent with Rodic's opinion that Ely's ability to comprehend and

carry out simple instructions or make simple work-related decisions was seriously limited and

that she was likely to be absent more than four days each month. (*Id.*). I conclude that the ALJ

failed to provide "good reasons" for his decision to assign limited weight to these portions of

Rodic's opinion. In his decision, the ALJ acknowledged that Rodic was Ely's treating physician,

but accorded Rodic's opinions little weight because the opinion was retrospective, "not

supported by the record as a whole," and inconsistent with Rodic's treatment notes that

"consistently assess a GAF of 60 or more." (Tr. 18).

Having reviewed the decision, the record, and Rodic's opinion, I conclude that the

three grounds provided by the ALJ for rejecting portions of Rodic's opinion do not constitute

"good reasons." First, I agree with Ely that an ALJ should not discount a treating physician's

opinion solely on the basis that it is retrospective, although the retrospective nature of the

opinion is a factor that may be considered in evaluating the weight to accord an opinion. *See*

*Patel v. Astrue*, 2010 WL 5093371, *8 (E.D.N.Y. 2010) ("[t]he timing of [the doctor's]

evaluation and treatment of [claimant] may bear on the weight to be accorded his opinions, but

the Commissioner may not reject medical evidence simply because it includes retrospective

assessments of a claimant's medical condition or functional capacity"). Thus, the ALJ erred to

the extent that he discounted the opinion of Rodic simply because a portion of it was

retrospective in nature.

Next, the ALJ's statement that the rejected opinions were "not supported by the

record as a whole" is too conclusory to constitute a "good reason" to reject the treating

psychiatrist's opinions.  The ALJ does not identify anything in the record, other than the GAF

scores, discussed below, that is inconsistent with Rodic's opinions.  Without identifying the

alleged inconsistencies in the record, the ALJ has failed to provide any basis for rejecting

Rodic's opinions.  *See Marchetti v. Colvin*, 2014 WL 7359158, *13 (E.D.N.Y. 2014) ("[u]nder

the treating physician rule, an ALJ may not reject a treating physician's opinion based solely on

such conclusory assertions of inconsistency with the medical record") (collecting cases); *Ashley*

*v. Comm'r of Soc. Sec.*, 2014 WL 7409594, *2 (N.D.N.Y. 2014) ("this . . . conclusory statement

about the treatment records fails to fulfill the heightened duty of explanation"); *Crossman v.*

*Astrue*, 783 F. Supp. 2d 300, 308 (D. Conn. 2010) (ALJ's statement that treating physician's

opinion was "inconsistent with the evidence and record as a whole" was "simply not the

'overwhelmingly compelling type of critique that would permit the Commissioner to overcome

an otherwise valid medical opinion'") (quoting *Velazquez v. Barnhart*, 2004 WL 367614, *10

(D. Conn. 2004)).

Finally, the ALJ explained that he discounted Rodic's opinion because the

functional ratings assessed by Rodic were not consistent with his treatment notes that

"consistently assess a GAF of 60 or more."  (Tr. 18).  "The GAF is a scale promulgated by the

American Psychiatric Association to assist in tracking the clinical progress of individuals [with

psychological problems] in global terms."[2]  *Kohler v. Astrue*, 546 F.3d 260, 262 n.1 (2d Cir.

---

[2]  The Social Security Administration has issued guidance for all state and federal adjudicators concerning
how to evaluate GAF ratings in assessing disability claims involving mental disorders.  *See, e.g., Mainella v. Colvin*,

2008) (internal quotations omitted); *see also Petrie v. Astrue*, 412 F. App'x 401, 406 n.2 (2d Cir. 2011) ("GAF is a scale that indicates the clinician's overall opinion of an individual's psychological, social and occupational functioning"). GAF scores may be relevant to an ALJ's severity and RFC determinations, although they are "intended to be used to make treatment decisions . . . and not disability determinations." *Henry v. Colvin*, 2014 WL 652945, *4 (W.D.N.Y. 2014) (internal quotations and citations omitted).

Although the ALJ was permitted to consider whether Rodic's opinion is consistent with the GAF scores assessed by him, *see Garcia v. Colvin*, 2015 WL 1280620, *7 (W.D.N.Y. 2015) (collecting cases), the ALJ was not permitted to discount Rodic's assessment *solely* on the basis of that alleged inconsistency. *See Wiggins v. Colvin*, 2015 WL 5050144, *4 (D. Conn. 2015) ("[t]he [Commissioner] has never viewed GAF scores as dispositive, . . . [a]nd courts in this Circuit have criticized ALJ's for relying on GAF scores alone as a basis for rejecting a treating opinion") (citing *Alsheikhmohammed v. Colvin*, 2015 WL 4041736, *8 (N.D.N.Y. 2015) and *Beck v. Colvin*, 2014 WL 1837611, *10 (W.D.N.Y. 2014)); *Garcia v. Colvin*, 2015 WL 1280620 at *8 (remanding where sole basis for rejecting treating source's opinion was alleged inconsistency with GAF scores reported in treatment notes); *Hall v. Colvin*, 18 F. Supp. 3d 144, 153 (D.R.I. 2014) ("[t]he ALJ's reliance on GAF scores to discredit or find credible certain medical evidence was error"); *Price v. Colvin*, 2014 WL 1246762, *7 (D. Kan. 2014) (ALJ improperly discounted treating source's opinion on the grounds that limitations identified were inconsistent with GAF score assessed by that treating source; "standing alone, a GAF score, which can reflect social and/or occupational functioning, does not necessarily

---

2014 WL 183957, *5 (E.D.N.Y. 2014).  That guidance was effective July 22, 2013, after the ALJ rendered his decision in this case.  *See Holloman v. Colvin*, 2014 WL 5090030, *7 (E.D. Pa. 2014) ("[t]o the extent that AM-13066 changed the weight an ALJ may accord to GAF evidence, [plaintiff] has provided no evidence that the 2013 policy applies retroactively to the ALJ's 2012 decision[;] . . . changes in the SSA regulations and corresponding policies typically apply only in cases decided after the enactment of the changed regulation and/or policy") (internal quotations omitted).

evidence whether an impairment seriously interferes with a claimant's ability to work[;]

[b]ecause a GAF score may not relate to a claimant's ability to work, the score, standing alone,

without further explanation, does not establish whether or not plaintiff's impairment severely

interferes with an ability to perform basic work activities") (internal citation omitted); *Carton v.*

*Colvin*, 2014 WL 108597, *14-15 (D. Conn. 2014) (ALJ improperly discounted treating source's

opinion on the grounds that "the finding of extreme difficulties is patently inconsistent with [the

doctor's] own assessment of a GAF of 55"; "the ALJ erred in relying on the GAF score as an

indicat[ion] of the severity of the plaintiff's mental impairment") (internal quotation omitted);

*Restuccia v. Colvin*, 2014 WL 4739318, *8-9 (S.D.N.Y. 2014) (ALJ improperly "concluded that

[the treating psychiatrist's] opinion was inconsistent with the psychiatrist's own assessment of

the claimant's GAF score showing only mild limitations[;] . . . [t]he ALJ did not have a sufficient

basis for not according controlling weight to [the psychiatrist's] opinion"); *Daniel v. Astrue*,

2012 WL 3537019, *10 (E.D.N.Y. 2012) (ALJ failed to provide good reasons for giving no

weight to treating source's opinions; "[the doctor's] GAF score . . . , while relevant, does not

contradict his ultimate finding that [plaintiff] was disabled and unable to work because a GAF

score does not have a direct correlation to the severity requirements in the [SSA's] disorder

listings") (internal quotations omitted); *Smith v. Astrue*, 565 F. Supp. 2d 918, 925 (M.D. Tenn.

2008) ("the GAF score, alone, cannot discredit [the doctor's] assessment of [p]laintiff's

limitations . . . [and] the ALJ's reference to supposed 'inconsistencies' is therefore insufficient to

provide 'good reasons' for his assignment of 'little weight' to the opinions of . . . a treating

source").  Rather, the ALJ was required to evaluate Rodic's opinion in light of the factors

identified above and in the context of the record as a whole.  *See Walterich v. Astrue*, 578

F. Supp. 2d 482, 515 (W.D.N.Y. 2008) (ALJ improperly discounted treating physician's opinion

10

because limitations assessed were inconsistent with rated GAF score; "[t]he ALJ, however, is not permitted to rely on any test score alone[;] . . . [n]o single piece of information taken in isolation can establish whether [a claimant is disabled]") (internal quotations omitted).  At the very least, the ALJ should have recontacted Rodic to obtain an explanation for the apparent inconsistency between his opinion and the GAF scores.  *See id.* at 517 ("insofar as the ALJ found [the doctor's] assessment of [p]laintiff's GAF at 55 as inconsistent with [the doctor's] opinion regarding [p]laintiff's inability to work, . . . the ALJ was obligated to re-contact [the doctor] to obtain an explanation for the apparent inconsistency"); *cf. Ayers v. Astrue*, 2009 WL 4571840, *2 (W.D.N.Y. 2009) ("where, as here, the particular treating physician's opinion that is at issue is unsupported by any medical evidence and where the medical record is otherwise complete, there is no duty to recontact the treating physician for clarification").

The ALJ's failure to articulate good reasons for discounting Rodic's opinion constituted legal error, and remand is appropriate for the ALJ to determine the weight, if any, to accord Rodic's opinion based upon the relevant factors and the record as a whole.  Although the ALJ may conclude that Rodic's opinion is still entitled to "limited weight," he must nonetheless provide good reasons supported by substantial evidence for his determination.  Additionally, on remand, the ALJ should clarify whether at step two he found Ely's alleged impairments of carpel tunnel syndrome and fibromyalgia to be not severe and, if so, whether he nonetheless considered those impairments and their limiting effects, if any, during the remainder of the sequential evaluation.

## CONCLUSION

For the reasons stated above, the Commissioner's motion for judgment on the

pleadings **(Docket # 14)** is **DENIED**, and Ely's motion for judgment on the pleadings **(Docket**

**# 9)** is **GRANTED** to the extent that the Commissioner's decision is reversed, and this case is

remanded to the Commissioner pursuant to 42 U.S.C. § 405(g), sentence four, for further

administrative proceedings consistent with this decision.

**IT IS SO ORDERED.**


                                                      *s/Marian W. Payson*
                                                    MARIAN W. PAYSON
                                                  United States Magistrate Judge


Dated:  Rochester, New York
        January 27, 2016